S. CHANDLER VISHER S.B.N. 52957
LAW OFFICES OF S. CHANDLER VISHER
268 Bush St., #4500
San Francisco, California 94104
Telephone: (415) 901-0500
Facsimile: (415) 901-0504
chandler@visherlaw.com

Local Counsel for Plaintiffs and the Proposed Class

Ryan M. Kelly (Pro Hac Vice to be submitted)
(rkelly@andersonwanca.com)
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Fax: 847-368-1501

Counsel for Plaintiffs and the Proposed Class

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION**

| | |
|---|---|
| MICHAEL MCLANAHAN and CAMERON MCLANAHAN, individually and as the representatives of a class of similarly-situated persons,<br><br>                Plaintiffs,<br><br>   v.<br><br>GREEN DAY POWER,<br><br>                Defendant. | **Case No.:**<br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs, Michael McLanahan ("Michael") and Cameron McLanahan ("Cameron") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint (the "Complaint") against Defendant, Green Day Power ("Defendant") and allege the following:

**JURISDICTION**

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises under the TCPA, a federal statute.

2. The Court has personal jurisdiction over Defendant because Defendant's principal place of business is within this District, it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in this District.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is within this District, Defendant committed statutory torts within this district, and a significant portion of the events took place within this district.

4. Intradistrict Assignment: Pursuant to Civil L.R. 120(d)), filing in the Sacramento Division of the Eastern District of California (the "Division") is proper, because a substantial part of the events or omissions which give rise to the claims occurred the counties assigned to this Division, Defendant promotes, markets, and sells products and/or services in the counties assigned to this Division, employs workers in this Division, and advertises in this Division. Further, Defendant, Green Day Power, maintains its offices in Sacramento and Plaintiffs reside in this Division.

**INTRODUCTION**

5. This case challenges Defendant's practice of making unsolicited telephone calls and sending unsolicited automated text messages to the cellular telephones of Plaintiffs and Class members, including calls and text messages to consumers registered on the National Do Not Call Registry, in violation of the Telephone Consumer Protection Act of 1991 ("TCPA" or "Act"), as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("JFPA"), and the regulations promulgated thereunder by the Federal Communications Commission ("FCC").

6. Over an eight-month period, from June 2019 to January 2020, Defendant made at least seven unsolicited phone calls and sent at least four unauthorized text messages (the "Texts") to Cameron's cellular telephone using an artificial or prerecorded voice and/or automatic telephone dialing system ("ATDS" or "auto-dialers") for the purpose of soliciting business from Cameron.

7. The TCPA prohibits any person from initiating a telephone call for a commercial purposes "to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227 (b)(1)(B).

8. The TCPA also regulates the use of auto-dialers. Specifically, the TCPA prohibits the use of auto-dialers to make <u>any</u> call to a cellular telephone number in the absence of an emergency or the prior express consent of the person being called. 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

9. The TCPA defines ATDS as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C§ 227 (a)(1).

10. The FCC is empowered to issue rules and regulations implementing the TCPA. The FCC has clarified that text messages qualify as "calls" under the TCPA, affirming that:

> under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular service, or any service for which the party is charged." **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order ("2003 Order"), 18 FCC Rcd. 14014, 14115 (July 3, 2003) (emphasis added); *see Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 269 n.2 (3rd Cir. 2013).

11. The FCC has further clarified that, except for calls made by tax-exempt nonprofit organizations or health care messages, any telephone call using an automatic telephone dialing

system that includes or introduces an advertisement or constitutes telemarketing must have prior express <u>written</u> consent as provided at 47 C.F.R. § 64.1200(f)(8) to be compliant with the TCPA. 47 C.F.R. § 64.1200(a)(2). (emphasis added). The FCC defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

12. The FCC has found that automated or prerecorded calls are a greater nuisance and invasion of privacy than live solicitation calls, and that such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they can pay in advance or after the minutes are used. 2003 Order, 18 FCC Rcd. at 14115.

13. Finally, the TCPA prohibits telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the National Do Not Call Registry, a database established by the FCC in 2003 to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written consent.

14. Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). TCPA regulation 47 C.F.R. § 64.1200(c) provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

15. These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id.*

16. A telemarketer who wishes to call a person listed on the Registry must obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id*. § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. *Id.*

17. A person whose number is on the Registry and has received more than one telephone solicitation within any twelve-month period by or on behalf of the same entity in

violation of the TCPA, can sue the violator and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

18. Plaintiffs, on behalf of themselves and all others similarly situated, bring this case as a class action asserting claims against Defendant under the TCPA.

19. Plaintiffs are informed and believe, and upon such information and belief aver, that this action is based upon a common nucleus of operative facts because the unsolicited automated calls and text messages at issue were and are being made and/or sent in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA.

20. This action seeks relief expressly authorized by the TCPA: (a) injunctive relief enjoining Defendant from making unsolicited calls and sending unsolicited text messages with an ATDS without prior express consent; (b) injunctive relief enjoining Defendant from making unsolicited calls and sending unsolicited automated text messages that include or introduce advertisements or constitute telemarketing without prior express written consent; and (c) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and, in the event of finding a willful or knowing violation, to have such damages trebled, as provided by § 227(b)(3) of the Act.

**PARTIES**

21. Plaintiff Michael McLanahan is a California resident who lives in this District. Michael is the primary subscriber to the cellular service family plan that received all of Defendant's calls and texts.

22. Plaintiff Cameron McLanahan is Michael's brother. Cameron is also a California resident who lives in this District. Cameron uses a cellular telephone number that is a part of Michael's family plan. This is Cameron's personal telephone number and has been for all pertinent times hereto. Cameron is the sole and authorized user of the cellular telephone number that received all of Defendant's calls and texts.

23. Defendant, Green Day Power, is a California corporation with its principal place of business in Sacramento, California. Defendant provides solar solutions for homeowners in California.[1]

24. Whenever in this Complaint it is alleged that Defendant committed any act or omission it is meant that Defendant's officers, directors, employees, and/or agents committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of Defendant's officers, directors, employees, and agents.

**FACTUAL ALLEGATIONS**

25. On or about February 2019, Cameron solicited quotes for the installation of solar panels at his home. One such quote was from Defendant that was sent to Cameron via email.

26. Shortly thereafter, at the end of February/beginning of March 2019, Cameron called Defendant to inform the company that he rejected its bid and, instead, elected to use a different solar provider.

27. Four months later, beginning on June 3, 2019 and lasting through January 9, 2020, Cameron received at least seven telephone calls and four text messages to his cellular number regarding Defendant's solar products.

28. Defendant called Cameron on his cellular phone on October 10, November 4, November 18, November 25, December 2, December 4, and December 30, 2019. The calls emanated from different telephone numbers. Copies of the screen shots confirming these incoming calls are attached as Exhibit A.

29. Many of the calls were automated, artificial, or prerecorded, discussing Defendant's products and services in an impersonal manner. No live human was on the other end of the line.

30. One of the calls was from a person seeking to discuss Defendant's products and services. Cameron informed this person that he was no longer interested in purchasing

---

[1] Information obtained from Defendant's website at https://greendaypower.com, last visited on September 2, 2020.

Defendant's products and to stop contacting him. This request was ignored and the calls continued.

31. Each call was similar in nature, providing impersonal and promotional content for Defendant's products with the goal of enticing Cameron to purchase those products.

32. Based on the impersonal nature of the calls and the use of voice recordings and different telephone numbers, the calls were made to recipients *en masse* and used a random or sequential number generator with the capacity to store or produce those numbers. In other words, on information and belief, Defendant, or someone on its behalf, made calls to Plaintiffs' cellular telephone using an automatic telephone dialing system as defined by 47 U.S.C. § 227(b)(1)(A) and the FCC.

33. Defendant also sent text messages to Cameron on June 3, 2019, August 6, 2019, September 9, 2019, and January 9, 2020. True and correct copies of the text messages are attached hereto as Exhibit B.

34. The June 3 text is addressed to Cameron from Adam and references his inquiry regarding roofing. While Cameron's request for a quote occurred four months prior, the text states that the parties met "last year about roofing and solar for your home." The text informs Cameron that new rebates are being offered and Defendant has updated its quote. The text was sent via short code number 67076.

35. The August 6 text is again addressed to Cameron from Adam. The text states that in the "month [of August] we've dropped our pricing to the lowest levels they've been all year." The text offers to update Defendant's quote if Cameron is "still in the market for Windows, Solar, Roofing or HVAC." The text was sent via short code number 818818.

36. Following the August 6 text, Cameron, on August 9, 2019, sent a text message to Defendant stating: "Please do not contact me again. I am on the national do not call list." A screenshot of that text is attached hereto as Exhibit C.

37. Notwithstanding Cameron's request to be left alone, Defendant, on September 9, 2019, texted Cameron an advertisement. The September 9 text is addressed to Cameron from Adam. It also offers specials for the month and seeks to update Cameron's quote. The text was

sent via short code number 818818.

38. The January 9 text, like the others, is addressed to Cameron from Adam. It states, "Looks like we met with you last year to give you a quote for a roof, solar, windows, or backup generator and we have new pricing now for 2020!" The text seeks to update Cameron's quote. The text was sent via short code number 818818.

39. Each text sent by Defendant is similar, offering rebates on Defendant's products based on the month sent. Thus, although addressed to Cameron, the texts are impersonal in nature.

40. Each text was sent via short code. Plaintiffs are informed and believe, and upon such information and belief aver, that short code telephone numbers are used by companies, such as Defendant, to message consumers *en masse*. The use of short code is indicative of non-human messaging because people do not have cellular phones with short codes.

41. Based on the foregoing, no human directed the text messages to Cameron's cellular number; rather, Cameron's number was called using a random or sequential number generator with the capacity to store or produce those numbers. In other words, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, the Texts to Cameron's cellular telephone using an automatic telephone dialing system as defined by 47 U.S.C. § 227(b)(1)(A) and the FCC.

42. Cameron's cellular telephone number was registered with the National Do Not Call Registry on or about April 6, 2009, and that registration was never revoked. As stated, Cameron informed Defendant of this registration in response to one of Defendant's texts. Cameron is the sole authorized user of the cellular telephone number at issue, which is used for personal matters.

43. Plaintiffs never requested, desired, permitted, or otherwise provided their prior express consent to Defendant to call his cellular telephone or send or transmit texts to Cameron's cellular telephone.

44. Plaintiffs never provided their prior express written consent to Defendant to call or send texts to Cameron's cellular number advertising and/or telemarketing Defendant's products

and services.

45. As a result of receiving the calls and texts, Plaintiffs incurred expenses to their wireless service, wasted data storage capacity, suffered the nuisance, waste of time, and aggravation that accompanies receipt of such unauthorized advertisements, and was subjected to an intrusion upon his seclusion and invasion of privacy.

46. On information and belief, Defendant made the same or substantially similar calls as to Plaintiffs *en masse* to a list of thousands of randomly generated cellular telephone numbers using an ATDS.

47. On information and belief, Defendant sent the same or substantially similar texts as to Plaintiffs *en masse* to a list of thousands of randomly generated cellular telephone numbers using an ATDS.

48. On information and belief, the Class members, as Plaintiffs, did not provide Defendant with either prior express consent or prior express written consent to receive such calls or text messages and, as a result, incurred expenses to their wireless services, wasted data storage capacity, suffered the aggravation that accompanies receipt of such unauthorized advertisements, and were subjected to an intrusion upon seclusion.

49. On information and belief, Defendant placed the same or substantially similar calls or texts as to Plaintiffs to Class members that had their telephone numbers registered in the National Do Not Call Registry.

## CLASS ACTION ALLEGATIONS

50. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiffs bring this class action on behalf of the following Classes:

### Artificial/Prerecorded Class

All individuals in the United States who, within the four years prior to the filing of the instant Complaint, received artificial and/or prerecorded voice calls from Defendant advertising its products, goods, or services and who did not provide prior express consent to receive such calls/texts.

### Autodialed Class

-9-

> All individuals in the United States who, within the four years prior to the filing of the instant Complaint, received calls and/or texts to their cellular telephones from Defendant through the use of an automatic dialing system and who did not provide prior express consent to receive such calls/texts.

### Autodialed Telemarketing Class

> All individuals in the United States who, within the four years prior to the filing of the instant Complaint, received calls and/or texts advertising Defendant's property, goods, or services to their cellular telephones from Defendant through the use of an automatic dialing system and who did not provide prior express written consent to receive such calls/texts.

### Do Not Call Registry ("DNC") Class

> All persons whose telephone numbers were listed on the Do Not Call Registry, and to whom, during the four years prior to the filing of this Complaint, received more than one call within any twelve-month period that was placed by or at the direction of Defendant to promote the sale of Defendant's services.

Excluded from the Classes are the Defendant and its officers, directors, employees, and agents and members of the Judiciary. Plaintiffs reserve the right to amend the class definition upon completion of class certification discovery.

51. <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Plaintiffs are informed and believe, and upon such information and belief aver, that the number of persons and entities of the Classes is numerous and joinder of all members is impracticable. Plaintiffs are informed and believe, and upon such information and belief avers, that the number of Class members is at least forty (40) based on Defendant's use of automated and impersonal call/text message content, use of short code to send the text messages, and disregard of Plaintiffs' request to be left alone.

52. <u>Commonality (Fed. R. Civ. P. 23 (a)(2))</u>: Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

   a. Whether Defendant made non-emergency calls and sent non-emergency text messages to Plaintiffs and the Class members' cellular telephones using an automatic telephone dialing system;

   b. Whether Defendant had prior express written consent to make its automated calls and send its automated text messages;

   c. Whether Defendant systematically made multiple calls and sent multiple text messages to Plaintiffs and consumers whose phone numbers were registered in the National Do Not Call Registry;

   d. Whether Defendant's conduct was knowing and/or willful;

   e. Whether Defendant is liable for damages, and the amount of such damages; and;

   f. Whether Defendant should be enjoined from such conduct in the future.

  53. <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>: Plaintiffs' claims are typical of the claims of all Class members. Plaintiffs received the same or substantially similar unsolicited calls and text messages as the other Class members sent by or on behalf of Defendant advertising the availability or quality of goods and services of the Defendant during the Class Period. Plaintiffs are making the same claims and seeking the same relief for himself and all Class members based upon the same federal statute. Defendant has acted in the same or in a similar manner with respect to the Plaintiffs and all the Class members by making and sending Plaintiffs and each member of the Class the same or substantially similar calls and/or text messages.

  54. <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>: Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs are interested in this matter, have no conflicts, and have retained experienced class counsel to represent the class.

55. <u>Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))</u>: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

    a.    Proof of Plaintiffs' claims will also prove the claims of the Class without the need for separate or individualized proceedings;

    b.    Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

    c.    Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to Plaintiffs and all Class members;

    d.    The amount likely to be recovered by individual Class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

    e.    This case is inherently manageable as a class action in that:

        i.    Defendant identified persons or entities to receive the unauthorized calls and/or text messages and Defendant's computer and business records will likely enable Plaintiffs to readily identify class members and establish liability and damages;

        ii.    Liability and damages can be established for Plaintiffs and the Class with the same common proofs;

        iii.    Statutory damages are provided for in the statute and are the same for Plaintiffs and all Class members and can be calculated in the same or a similar manner;

iv. A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

v. A class action will contribute to uniformity of decisions concerning Defendant's practices; and as a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

**COUNT I**
**Violation of 47 U.S.C. 47 U.S.C. § 227 (b)(1)(B) – Prerecorded Calls**

56. Plaintiffs incorporate by reference paragraphs 1-49 as if fully set forth herein.

57. As stated, the TCPA prohibits any person from initiating a telephone call for a commercial purpose "to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227 (b)(1)(B).

58. Plaintiffs received several artificial and/or prerecorded calls from Defendant for commercial purposes between October 10, 2019 and December 3, 2019. The messages were generic in nature and advertised Defendant's property, goods, and services.

59. Plaintiffs did not provide their prior express consent to receive such calls and in fact informed Defendant that they did not want to receive such calls.

60. Based on the foregoing, on information and belief, Defendant made the same, or substantially similar calls to the Class members *en masse* without their prior express consent.

61. Defendant knew, or should have known, that Plaintiffs and the Class members did not provide prior express consent to receive artificial and/or prerecorded calls advertising Defendant's products and services.

62. By making such calls to Plaintiffs and the Class, Defendant violated 47 U.S.C. § 227 (b)(1)(B).

63. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiffs and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. To the extent the Court finds that Defendant's conduct was knowing or willful, the Court may treble the amount of damages. Plaintiffs and the Class are also entitled to an injunction against future commercial calls by or on behalf of Defendant that utilize an artificial or prerecorded voice.

**Count II**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii) – ATDS/Telemarketing Calls**

64. Plaintiffs incorporate by reference paragraphs 1-49 as if fully set forth herein.

65. As stated, the TCPA prohibits the use of auto-dialers to make <u>any</u> call to a cellular telephone number in the absence of an emergency or the prior express consent of the person being called. 47 U.S.C. § 227(b)(1)(A)(iii). The FCC has further clarified that, except for calls made by tax-exempt nonprofit organizations or health care messages, any telephone call using an automatic telephone dialing system that includes or introduces an advertisement or constitutes telemarketing must have prior express <u>written</u> consent as provided at 47 C.F.R. § 64.1200(f)(8) to be compliant with the TCPA. 47 C.F.R. § 64.1200(a)(2)(emphasis added).

66. Plaintiffs received numerous calls and four texts from Defendant between October 10, 2019 and January 9, 2020 advertising Defendant's products.

67. The majority of the voice calls were made with an artificial or prerecorded voice and discussed Defendant's products and services in an impersonal manner.

68. The texts sent to Plaintiffs were also impersonal advertisements offering rebates based on the month sent. The Texts were also sent via short code.

69. Plaintiffs provided neither their prior express consent nor their prior express written consent to receive such calls and in fact informed Defendant that they did not want to receive such calls.

70. Based on the foregoing, on information and belief, Defendant made the same, or substantially similar calls and sent the same or substantially similar texts to the Class members *en masse* without their prior express consent or prior express written consent.

71. Defendant made the calls and sent the texts, or had them made and sent on its behalf, using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

72. Defendant utilized equipment that made calls and the sent text messages, including the calls and texts here, to Plaintiffs and other Class members simultaneously and without human intervention.

73. By making such calls and sending such texts to Plaintiffs and the Class, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

74. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiffs and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. To the extent the Court finds that Defendant's conduct was knowing or willful, the Court may treble the amount of damages. Plaintiffs and the Class are also entitled to an injunction against future calls and/or texts by or on behalf of Defendant that utilize an ATDS.

### Count III
### Violation of 47 U.S.C. § 227(c)(5) – Do Not Call Registry

75. Plaintiffs incorporate by reference paragraphs 1-49 as if fully set forth herein.

76. As demonstrated above, Defendant not only made numerous telemarketing calls and sent several telemarketing texts to Plaintiffs' cellular phone, it did so after being informed that Plaintiffs' cell phone was registered with the National Do Not Call Registry.

77. Based on the impersonal nature of the calls and text messages, the use of artificial or prerecorded voice, and the use of short code to send the texts, Defendant made the calls and sent the texts *en masse* to Plaintiffs and DNC Class members,

78. Thus, on information and belief, Defendant violated 47 C.F.R. § 64.1200(c) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers who had registered their telephone numbers in the National Do Not Call Registry, such as Plaintiffs and the DNC Class, without instituting procedures that comply with the regulatory minimum standards as described in 47 C.F.R. § 64.1200(c)(2)(i).

79. On information and belief, Defendant never obtained prior express written permission to make telemarketing calls or texts to Plaintiffs or the DNC Class.

80. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the DNC Class members received more than one telephone call in a 12-month period made by or on behalf of Defendant. As a result of Defendant's conduct as alleged herein, Plaintiffs and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia,* to receive up to $500 in damages for such violations.

81. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiffs and the DNC Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Michael McLanahan and Cameron McLanahan, individually and on behalf of the Class, respectfully request the following relief against Defendant, Green Day Power:

    a. An order certifying this matter as a class action with Plaintiffs as Class Representative, and designating Anderson + Wanca as lead Class Counsel;

b. An award of statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c. An award of statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 C.F.R. § 64.1200;

d. An award of up to $500 in damages for each violation of the Do Not Call Registry, 47 U.S.C. 227(c)(5) and the implementing regulations promulgated thereunder at 47 C.F.R. § 64.1200(c)-(e), including but not limited to 47 C.F.R. § 64.1200 (c)(2) and 47 C.F.R. § 64.1200(e), pursuant to 47 U.S.C. § 227(c)(5)(A);

e. An award of attorneys' fees and costs to counsel for the Classes;

f. Injunctive relief prohibiting the Defendant's conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A); and

g. For such other and further relief as the Court deems necessary, just, and proper.

Respectfully submitted,

MICHAEL MCLANAHAN and CAMERON MCLANAHAN, individually and as the representatives of a class of similarly-situated persons

By: /s/ S. Chandler Visher_____
S. CHANDLER VISHER   _____


LAW OFFICES OF S. CHANDLER VISHER
268 Bush St., #4500
San Francisco, California  94104
Telephone: (415) 901-0500
Facsimile: (415) 901-0504
chandler@visherlaw.com

*Local Counsel for Plaintiffs*

And:

RYAN M. KELLY (*pro hac vice to be submitted*)

| | |
|---|---|
| 1 | ANDERSON + WANCA |
| 2 | 3701 Algonquin Road, Suite 500 |
| | Rolling Meadows, IL  60008 |
| 3 | Telephone:  847-368-1500 / Fax:  847-368-1501 |
| | rkelly@andersonwanca.com |
| 4 | |
| 5 | *Counsel for Plaintiffs* |